UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT CANE, <br><br> *Plaintiff*, <br><br> v. <br><br> NEW BRITAIN POLICE DEPARTMENT, et al., <br><br> *Defendants*. | No. 3:16cv1638(MPS) |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Robert Cane, who is self-represented, filed this action under 42 U.S.C. § 1983 against several New Britain police officers arising out of his October 7, 2013 arrest. Officers Karl Mordasiewicz, Brandon Egan, John Rodriguez, and Devin Saylor have moved for summary judgment on the Plaintiff's claim of excessive force, which is the sole remaining claim.[1] ECF No. 233. Despite notice, Cane has not filed a response to the motion.[2] For the reasons that follow, the Defendants' motion is granted.

**I.     FACTS**[3]

---

[1] The Court (Squatrito, J.) previously granted summary judgment in favor of all the Defendants as to the Plaintiff's claims except an excessive force claim asserted against Mordasiewicz, Egan, Rodriguez, and Saylor. ECF No. 92. The case subsequently was transferred to Judge Merriam, who issued an Order to Show Cause why the ruling denying summary judgment on the excessive force claim should not be reconsidered because it relied on inapposite case law concerning the use of force in connection with handcuffing and did not address defendants' qualified immunity argument. ECF No. 202. After the parties briefed the issue, ECF Nos. 230, 231, Judge Merriam determined that the ruling should be reconsidered and permitted the Defendants to file a renewed motion for summary judgment, together with appropriate exhibits and a statement of material facts. ECF No. 232. After the Defendants filed their motion, the case was transferred to the undersigned. ECF No. 234.

[2] Upon transfer, I extended the deadline for the Plaintiff's opposition beyond the normal 21-day response deadline. Compare ECF No. 233 with ECF No. 235. When the Plaintiff failed to file a response, I issued an order alerting the Plaintiff that his opposition was overdue and extended – again - the deadline by which his memorandum and Local Rule 56 Statement were due. ECF No. 237. Still the Plaintiff filed no response.

[3] Local Rule 56(a)2 requires the party opposing summary judgment, here Cane, to submit a Local Rule 56(a)2 Statement that contains separately numbered paragraphs corresponding to the paragraphs set forth in the moving party's Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party in each paragraph. D. Conn. L. Civ. R. 56(a)2. Each admission or denial must include a citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3. In addition, the opposing party must submit a list of additional facts not included in the movant's Local Rule 56(a)1 Statement that it contends "establish genuine

In October 2013, Darlene ("Dolly") Winkler and Patricia ("Trish") Lesperance were staying at Cane's home. Defendants' Local Rule 56(a)1 Statement, ECF No. 233-2 ¶¶ 1, 3.

On October 7, 2013, Dolly's son, Robert Winkler, and Dolly's sister, Debra Miskimen, went to the police station and spoke to Officer Depinto. ECF No. 233-2 ¶¶ 7, 9. Robert Winkler reported that his mother (Dolly) had been held against her will and assaulted by Cane. *Id.* ¶ 8. According to Robert, his brother, Tyler, had called him that morning and said that Trish had come to his house. *Id.* ¶ 10. Trish told Tyler that Cane had tied her and Dolly up and had beaten them. *Id.* ¶ 11. Robert, his girlfriend, Mikala Daniele, and his aunt, Debra Miskimen, went to the hospital where Dolly was being treated for injuries in the critical care unit. *Id.* ¶ 13. Robert and Debra Miskimen told Officer Depinto that Dolly was afraid to provide information to the police because Cane had said he would kill her if she did so. *Id.* ¶ 14. They reported that Trish had said that Cane told her that if anyone went to the police, "I'm going out with guns ablazing." *Id.* ¶ 15. They also said that Cane had used a firearm to "pistol whip" Dolly and Trish. *Id.* ¶ 16. According to Officer Depinto, based on this information, Cane was considered armed and had made threats suggesting that he would kill anyone who cooperated with the police and police officers who attempted to locate him. *Id.* ¶ 17.

Officer Depinto went to the hospital to interview Dolly. *Id.* ¶ 18. He observed that she had injuries to her face and neck and learned that she had two broken ribs. *Id.* ¶¶ 18, 21. Dolly was not cooperative. *Id.* ¶ 19. After Officer Depinto left the room, Robert told him that Dolly had told

---

issues of material fact precluding judgment in favor of the moving party." D. Conn. L. Civ. R. 56(a)2. Cane was apprised of the rule and of the consequences of failing to respond to a motion for summary judgment. *See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, ECF No. 233-24. Cane also had been previously advised of this requirement when the Defendants filed their initial motion. ECF No. 86-8.

Because Cane has failed to file a Local Rule 56(a)2 Statement, the facts in the Defendants' statement that are supported by admissible evidence, which include all the facts from their statement set forth herein, are deemed admitted. D. Conn. L. Civ. R. 56(a)1. ("Each material fact set forth in the local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party....").

Mikala "the whole story." *Id.* ¶ 23. Depinto learned that on October 5, 2013, Cane accused Dolly and Trish of theft. *Id.* ¶ 24. He made Dolly remove her clothes, tied her to a chair, and choked her using a dog collar he had placed around her neck. *Id.* He punched and kicked her. *Id.* He later tied her to a bed and struck her several times in the head with a gun. *Id.* She was bleeding and blood got on the bed. *Id.* Cane screamed at her for this, removed her restraints and made her shower, after which he tied her to the bed and forced pills into her mouth. *Id.* Dolly passed out. *Id.* When she woke up, Cane told her that he had killed Trish and that if Dolly told anyone what he had done, he would kill her too. *Id.* After a while, Dolly was able to get loose and went downstairs where she saw Trish sleeping on the couch. *Id.* Cane brought Dolly back upstairs and hit her. *Id.* Cane did not let Dolly and Trish go until the next night, October 6, 2013. *Id.* Depinto was told that Cane videotaped the incident, including some of the beatings. *Id.* ¶ 25. According to Mikala Daniele, Cane told Dolly that if she told anyone what happened, he would "get" her grandson and that he knew where he lived. *Id.* ¶ 28.

During the investigation, Depinto learned that Cane was a felon with prior convictions for assault and firearms offenses. *Id.* ¶ 30. All the information was relayed to Sergeant Burgos. *Id.* ¶ 31.

On October 7, 2013, officer Linda Glimpse spoke with Dolly's sisters, Lorraine Tanguay and Debra Miskimen, who gave further details about the incident. *Id.* ¶¶ 33, 35. Officer Glimpse also spoke to Dolly, who gave an account of the incident and told her, among other things, that Cane was affiliated with the Outlaw Motorcycle gang and had guns in his house. *Id.* ¶ 37. Glimpse relayed the information to other officers in the investigation. *Id.* ¶ 39.

That evening, Sergeant Burgos coordinated with officers in the area of Cane's home. *Id.* ¶ 42. Officers blocked off the street to oncoming traffic and positioned their cruisers in front of

the residence. *Id*. ¶ 50. Officer Scirpo turned on his siren to get Cane's attention. *Id*. ¶ 51. Cane looked outside the window, went to the front door, and opened it. *Id*. ¶¶ 52, 54. Cane's house had a fence surrounding the front yard. *Id.* ¶ 44. Scirpo told Cane to "come out to the fence, we want to talk to you." *Id.* ¶ 54. Cane asked if they had a warrant and Scirpo responded that they did not. *Id.* ¶¶ 54, 55. Cane told him to come back when he had a warrant and closed the door. *Id.* ¶ 55. Cane spoke with the police on the phone. *Id.* ¶¶ 56-58, Ex. O (recording). The recording of the call reflects that Cane was agitated and hostile. Ex. O. The police told Cane to secure his dog and come outside, but Cane responded that he didn't have to do anything because they did not have a warrant. ECF No. 233-2 ¶ 59; Ex. O. Cane exited his front door and yelled at the officers in the front that he was not going anywhere unless they had a warrant. *Id.* ¶ 60. Officers ordered Cane to come to the fence, but he did not comply. *Id.* ¶ 61.

Cane said he had a knife on him, and told officers that he was taking it out and bringing it inside. *Id.* ¶ 62. Cane repeatedly yelled at the officers that he was not going anywhere unless they had a warrant. *Id.* ¶ 63. At one point, Cane exited his front door, took off his shirt and pulled down his pants, ostensibly to show he had no weapons. *Id.* ¶ 64, Ex. O.

While Cane was on the phone with officers and walking in and out of his front door, defendants Mordasiewicz, Egan, Rodriguez and Saylor entered Cane's backyard. *Id.* ¶ 65. There were multiple vehicles in the backyard and one of them started running for a few seconds before shutting off. *Id.* ¶ 67. The defendants relayed this information to officers who were speaking with Cane on the telephone. *Id.* ¶ 68. While on the phone, the police asked Cane if he started the car and Cane said that he did not. *Id.* ¶ 70. Cane went to the back porch, opened the door, stepped onto the outside landing, and saw the defendants in his backyard. *Id.* Agitated and angry, Cane yelled at the officers to get off his property. *Id.* ¶¶ 71-72. He went back to the front yard and yelled

4

profanities at the officers and repeatedly told them to "shoot me." *Id.* ¶¶ 73-74; Ex. O.  He threw his phone over the front fence.  *Id.* ¶ 75.  During this entire encounter, Cane was agitated and irate. *Id.* ¶ 76.  He continually demanded a warrant, threatened to have his dog bite the officers, said he was "not fucking around," and at one point said he had nothing to live for. *Id.*; Ex. O.  He yelled into the phone that the officers were "freaking me out" and that he "was getting nervous."  Ex. O.

Cane eventually went to the front yard fence to talk to Scirpo. *Id.* ¶ 77.  The defendants approached Cane from behind and ordered him to the ground. *Id.* ¶ 78  He did not comply. *Id.* ¶ 78.  Instead, Cane grabbed onto the fence with both hands and refused to let go. *Id.* ¶ 79. Officers continually commanded him to let go of fence, but he failed to comply. *Id.* ¶ 80. Cane began kicking the officers. *Id.* ¶ 81.  He was ordered to stop kicking and put his hands behind his back, but he failed to comply.  *Id.*  Defendants Egan and Mordasiewicz grabbed Cane's arms from behind, pulled him from the fence, spun him around, and brought him to the ground.  ECF No. 233-2 ¶ 82; ECF No. 233-22, Mordasiewicz Aff. ¶ 13; ECF No. 233-20, Egan Aff. ¶ 15.  He was placed in handcuffs.  *Id.* ¶ 84. The defendants did not exert any additional force to place him in handcuffs.  *Id.* ¶ 85. After he was handcuffed, officers stood him up and walked him to the police cruiser.  *Id.* ¶ 88.  Cane was charged with breach of peace in the second degree, threatening, interfering with a police investigation, and resisting arrest.  ECF No. 233-16, Scirpo Aff. ¶ 17. Cane's encounter with the police from when he first saw them to when he was placed in the cruiser lasted approximately 45 minutes.  ECF No. 233-2 ¶ 89.

## II.     LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (internal quotation marks and citations omitted). "A genuine dispute of

5

material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Nonetheless, "unsupported allegations do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

Finally, when, as here, a motion for summary judgment is unopposed, the Court may not grant summary judgment unless it determines that the moving party is entitled to judgment as a matter of law. *See Vermont Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004).

## III. DISCUSSION

The Defendants argue that they are entitled to summary judgment on Cane's Fourth Amendment excessive force claim because the use of force was objectively reasonable and, in the alternative, they are entitled to qualified immunity.[4]

"[A]ll claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis and internal quotation marks omitted). "The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000). Determining the reasonableness of the force used "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. These are often called the *Graham* factors. The record "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "In sum, the 'standard' to be applied in determining whether 'the amount of force' used exceeded the amount that was 'necessary' in the particular circumstances is 'reasonableness at the moment.'" *Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015)

---

[4] Although Saylor and Rodriguez did not grab Cane, a "police officer who does not personally inflict the injury at the core of an excessive use of force claim may still be liable under § 1983 if the officer was present at the assault, and fails to intervene to prevent the harm when the officer had a reasonable opportunity to do so." *Ridge v. Davis*, No. 18-CV-8958, 2022 WL 357020, at *10 (S.D.N.Y. Feb. 7, 2022) (quotation marks and citation omitted).

(quoting *Graham*, 490 U.S. at 396-97). "A court's role in considering excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." *Brown v. City of New York*, 798 F.3d 94, 103 (2d Cir. 2015).

Qualified immunity "shields police officers acting in their official capacity from suits for damages unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Jones v. Parmley*, 465 F.3d 46, 553 (2d Cir. 2006) (ellipses omitted)). "When a defendant moves for summary judgment based on qualified immunity, courts consider whether the facts shown make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Id.* (quotation marks and citations omitted). "A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 739 (alterations, quotation marks, and citations omitted). "Although we do not require a case directly on point to hold that a defendant's conduct violated a clearly established right, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quotation marks and citations omitted).

"[I]n an excessive force case, the issue of qualified immunity necessarily overlaps considerably with the question of liability on the underlying claim, as both require an assessment of the objective reasonableness of the arresting officer's conduct." *Diaz v. Hartford Police Dep't*, No. 3:18CV1113(KAD), 2021 WL 1222187, at *6 (D. Conn. Mar. 31, 2021). *See also Scott v. Heinrich*, 39 F.3d 912, 914 (9th Cir. 1994) ("In Fourth Amendment unreasonable force cases, unlike in other cases, the qualified immunity inquiry is the same as the inquiry made on the merits" (citation and quotation marks omitted)). Therefore, defendants are "entitled to summary judgment

if the Court concludes that there is no genuine dispute with respect to the facts and circumstances supporting the objective reasonableness of their actions." *Sanchez v. Chapman*, No. 3:19CV1314(SVN), 2022 WL 657621, at *5 (D. Conn. Mar. 4, 2022).

The Defendants argue that application of the *Graham* factors demonstrates that they used reasonable force to arrest Cane. The first factor - the severity of the alleged crimes - favors the Defendants. Cane was alleged to have restrained and assaulted two women and threatened to kill one of them and/or her grandson. These offenses are unarguably severe. On officer safety, the second factor, Cane had a criminal history of assault and firearms charges and was reported to have multiple guns accessible in his home. In addition, he was reported to have said that he would "go out with guns ablazing." ECF No. 233-2 ¶ 15. He ignored direct commands to come out of the house and instead engaged in a 45-minute hostile standoff with the police, during which at one point he indicated that he had a knife on his person. *Id.* ¶¶ 62, 89. As to the third *Graham* factor, the Defendants used force to effectuate Cane's arrest only after he resisted being taken into custody. Despite the officers' commands, Cane held onto the fence and despite police commands, refused to let go. Instead, he kicked at the officers. *Id.* ¶ 81. He defied orders to stop kicking and put his hands behind his back. *Id.* Under these circumstances, it was objectively reasonable for the Defendants to believe that urgent and forcible action was necessary to effect the arrest, and that it was reasonable for them to take Cane to the ground. On this record, no reasonable jury could find that the Defendants' actions of grabbing Cane's arms, pulling him from the fence, and bringing him to the ground were objectively unreasonable. *See Kalfus v. New York & Presbyterian Hosp.,* 476 Fed. App'x 877, 880-81 (2d Cir. 2012) (where plaintiff "resisted arrest by refusing to stand up or to permit himself to be handcuffed" and defendants turned him "onto his stomach, pulled his arms behind his back, placed handcuffs on him, and lifted him onto his feet by pulling on his upper

9

arms, sweatshirt, and waist," "[n]o reasonable factfinder could conclude that such actions were excessive in the circumstances"); *Sanchez*, 2022 WL 657621, at *2 (where Plaintiff refused to comply with commands to stop moving and put his hands behind his back and instead, "began to yell obscenities," "continued to ignore verbal commands," and attempted to walk past Defendants toward the room containing the weapons, defendant did not use excessive force when he "grabbed [Plaintiff] by the arm and pushed him against the wall in [an] attempt to control him for detainment and handcuffing"); *Gutierrez v. New York*, No. 18-CV-3621 (MKB), 2021 WL 681238, at *14 (E.D.N.Y. Feb. 22, 2021) (where plaintiff was apprehended by Defendants outside of a store that had been robbed, resisted attempts to handcuff him by "brushing" the officers off while they attempted to restrain him and by putting his arm back down to his side each time officers attempted to grab it, defendants' actions of tackling plaintiff to the ground and then handcuffing him were not objectionably unreasonable); *Massaro v. Town of Trumbull*, 525 F.Supp.2d 302, 308 (D. Conn. 2007) (granting summary judgment where defendant "may not have needed to push [plaintiff] to the ground in order to arrest him [but] was faced with a tense and uncertain situation involving a convicted felon and had to make a split-second decision."), *aff'd sub nom. Massaro v. Jones*, 323 Fed. App'x 68 (2d Cir. 2009); *Flanigan v. Town of Colchester*, 171 F. Supp. 2d 361, 366 (D. Vt. 2001) (where plaintiff evaded the officer's attempts to handcuff him and took a few steps toward the plaintiff's house, officer who took plaintiff to the ground, allegedly fracturing a right orbit bone when the plaintiff's face hit the ground, did not use unreasonable force). Accordingly, the Defendants are entitled to summary judgment.[5]

---

[5] In any event, the Defendants are entitled to qualified immunity. Even if their actions were excessive, they did not violate a clearly established right of which a reasonable officer would have known. Cane has not pointed to, nor am I aware of, any authority suggesting the existence of a clearly established rule prohibiting police officers from acting in the manner they did in this case. The undisputed facts of the case show that Cane actively resisted the officers' efforts to subdue and secure him. On this record, at the very least, reasonable officers could disagree as to whether the force the defendant officers applied in this case was lawful. *See McKinney v. City of Middletown*, 49 F.4th 730, 734 (2d Cir. 2022) (holding defendants were entitled to qualified immunity because their incremental and combined use

**IV.     CONCLUSION**

For the foregoing reasons, the Defendants' motion for summary judgment (ECF No. 233) is GRANTED.  The Clerk of the Court is instructed to enter judgment and close the case.

IT IS SO ORDERED.

                                                   _____/s/_____
                                                   Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                May 8, 2023

---

of a baton, a canine, and a taser did not violate clearly established law of which a reasonable officer would have known).